FILED IN OPEN COURT

2.26.2025

CLERK, U. S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                          Case No. 3:25-cr- 41-TJC- SJH

PING PING ZHENG

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by the undersigned Assistant United States Attorney, and the defendant, PING PING ZHENG, and the attorney for the defendant, Kyndra L. Mulder, mutually agree as follows:

**A.    Particularized Terms**

1.    Count Pleading To

The defendant shall enter a plea of guilty to Count One of the Information, which charges the defendant with harboring an aliens who was were ADC Kcm unlawfully present in the United States, for the purpose of commercial advantage and private financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(iii) and (a)(1)(B)(i).



2.    Maximum Penalties

The maximum penalties for Count One are a term of imprisonment of not more than ten years, a fine of not more than $250,000, or both a term of

Defendant's Initials ____                          AF Initials ____

imprisonment and a fine, a term of supervised release of not more than three years, and a special assessment of $100, which is due on the date of sentencing. A violation of the terms and conditions of supervised release is punishable by not more than two years of additional imprisonment as well as the possibility of an additional term of supervised release.

3.    Elements of the Offense

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One are:

(1)    an alien entered or remained in the United States in violation of law;

(2)    the defendant knowingly concealed, harbored, or sheltered the alien from detection within the United States;

(3)    the defendant either knew or acted in reckless disregard of the fact that the alien had entered or remained in the United States in violation of law; and

(4)    one of the defendant's motives was commercial advantage or private financial gain.

4.    No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States

Defendant's Initials _____

2

Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

5.    Waiver of Indictment

The defendant agrees to waive the right to be charged by way of indictment by a federal grand jury.

6.    Acceptance of Responsibility

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.4., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely

Defendant's Initials 

3

with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

7.    Zero-Point Offender Adjustment

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States and the defendant agree to jointly recommend to the Court that the defendant receive a downward adjustment of two levels pursuant to USSG § 4C1.1 because the parties believe the defendant meets the criteria for a zero-point offender.  The parties understand that such a joint recommendation is not binding on the Court, and if not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

8.    Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 8 U.S.C. § 1324(b)(1), 18 U.S.C. § 982(a)(6), and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant, or the defendant's nominees.

The assets to be forfeited specifically include, but are not limited to, the following:

Defendant's Initials 

4

a. Real property, including all improvements thereon and appurtenances thereto, located at 12572 Shallow Brook Court, Jacksonville, Florida 32225, the legal description for which is: Lot 11, Springbrook Unit One, according to map or plat thereof as recorded in Plat Book 54, Page 49, of the Public Records of Duval County Florida.

Parcel Identification Number: 165265-5055

Record Owner: Ping Ping Zheng

b. a 2017 Ford Transit van, VIN# 1FBZX2YM1HKA47158, titled to Ping Ping Zheng.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture

5

Defendant's Initials 

order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax

Defendant's Initials 

6

returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct.

The defendant agrees that the United States is not limited to forfeiture of the property specifically identified for forfeiture in this Plea Agreement. If the United States determines that property of the defendant identified for forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; then the United States shall, at its option, be entitled to forfeiture of any other property (substitute assets) of the defendant up to the value of any property described above. The defendant expressly consents to the forfeiture of any substitute assets sought by the Government. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of

Defendant's Initials 

7

responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including satisfaction of any preliminary order of forfeiture for proceeds.

**B.** **Standard Terms and Conditions**

1.    <u>Restitution, Special Assessment and Fine</u>

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (18 U.S.C.

Defendant's Initials 

8

§ 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing.

The defendant understands that this agreement imposes no limitation as to fine.

2.    Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.    Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.    Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information,

Defendant's Initials 

including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.    <u>Financial Disclosures</u>

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that ~~his~~ financial statement and disclosures will be complete, accurate and truthful and will include all assets in which ~~he~~ has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank

Defendant's Initials _____

10

records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.    <u>Sentencing Recommendations</u>

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may

Defendant's Initials 

11

make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.   <u>Defendant's Waiver of Right to Appeal the Sentence</u>

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from ~~his~~ her waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.   <u>Middle District of Florida Agreement</u>

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

Defendant's Initials _____

12

9.    <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.    <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant

Defendant's Initials                 13

further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11. Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12. Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.



Defendant's Initials _____

14

13.   <u>Certification</u>

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this ___0 5___ day of ~~January~~ Feb, 2025.


_____
PING PING ZHENG
Defendant

ROGER B. HANDBERG
United States Attorney

_____
ARNOLD B. CORSMEIER
Assistant United States Attorney

_____
KYNDRA L. MULDER
Attorney for Defendant

_____
FRANK TALBOT
Assistant United States Attorney
Chief, Jacksonville Division

15

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                    Case No. 3:25-cr-**41-TJC-SJH**

PING PING ZHENG

### PERSONALIZATION OF ELEMENTS

1.     Do you admit that from June 2023 through August 14, 2024, in the Middle District of Florida, aliens who had unlawfully entered or remained in the United States lived at a residence owned or controlled by you located at 12572 Shallow Brook Court, Jacksonville, Florida?

2.     Do you admit that you knowingly harbored the aliens by providing them with housing at the residence, employment at a restaurant operated by you, and transportation to and from work, and by not requiring them to provide documents to establish that they were legally authorized to work in the United States?

3.     Do you admit that you knew or acted in reckless disregard of the fact that the aliens had entered or remained in the United States in violation of law?

4.     Do you admit that one of your motives was commercial advantage and private financial gain in that you harbored the aliens to work at a restaurant operated by you, paid the aliens their wages in cash, did not withhold taxes and other

Defendant's Initials 

payments from their wages, did not pay the employer's portion of these payments to

government authorities, and did not pay unemployment taxes for the aliens?

Defendant's Initials                 2

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                        Case No. 3:25-cr- 41-TJC-SJH

PING PING ZHENG

## FACTUAL BASIS

The defendant, PING PING ZHENG, operated a restaurant called Kamiya 86 Asian Bistro and Sushi Bar located at 1286 3rd Street South, Jacksonville Beach, Florida 32250 (hereinafter "Kamiya 86"). Records of the State of Florida reflect that the defendant was the president and registered agent of a company called Deluxe Zheng Inc., which was first registered with the State of Florida on February 21, 2019. The business address listed was the address of Kamiya 86.

Duval County Property Appraiser records reflected that the defendant was the owner of a residence located at 12572 Shallow Brook Court, Jacksonville, Florida 32225. Jacksonville Electric Authority records reflected that the defendant was the owner of the JEA account for the residence, with a service start date of January 24, 2022.

While investigating another restaurant, Homeland Security Investigations ("HSI") became aware of information leading to the suspicion that the operators of Kamiya 86 were employing and housing undocumented aliens. During surveillance

Defendant's Initials 

conducted on twelve occasions during the period of July 2023 through August 2024, agents observed and video recorded groups of approximately four to six individuals who appeared to be Hispanic and Asian emerge from and depart the residence at 12572 Shallow Brook Court and/or arrive at Kamiya 86. After arriving at the restaurant, the individuals entered the restaurant. On every occasion except one, a white 2017 Ford Transit van was used to transport the individuals. The vehicle identification number ("VIN") of the van was later determined to be 1FBZX2YM1HKA47158.

On December 14, 2023, an agent asked a patrol officer from the Jacksonville Sheriff's Office ("JSO") to perform a traffic stop on the Ford van after it departed the residence at 12572 Shallow Brook Court and before it arrived at Kamiya 86. On the same date, the JSO officer conducted the traffic stop and obtained identifying information for the individuals in the van. During the stop, the driver of the van told the officer that the passengers in the vehicle were employees and that they were running late to get to the restaurant. An agent later queried immigration databases for the identified individuals and found that there were no records for three Hispanic passengers, who provided their names but said that they had no identification, leading the agent to believe that they were unlawfully present in the United States.

On August 14, 2024, law enforcement officers executed federal search warrants at Kamiya 86, the residence at 12572 Shallow Brook Court, and the Ford van. Before executing the warrants, agents conducted surveillance at the residence

Defendant's Initials _____                2

and observed the van parked in the driveway. Agents then observed three individuals come out of the residence and get into the van, which departed the residence, and agents followed it as it traveled to Kamiya 86. An officer with the Jacksonville Beach Police Department stopped the van for speeding as it approached Kamiya 86. After the van was stopped, two Border Patrol Agents went to the scene to question the occupants about their citizenship and immigration status. One of the occupants was a person named Domingo Santiz-Diaz and the agents determined that he was a citizen of Mexico who was illegally present in the United States. Santiz-Diaz was administratively arrested and transported to the Jacksonville Border Patrol Station for immigration processing.

While agents were conducting the search of Kamiya 86, they encountered the defendant when she arrived at the restaurant. With the assistance of a Mandarin interpreter, two agents identified themselves and the defendant invited them into the restaurant and she agreed to be interviewed at a dining room table. During the interview, the defendant stated that she had been the sole owner of the restaurant since 2019. She said that she paid the employees who had identification via a payment program and that she paid three Hispanic employees who did not have identification in cash. She stated that the Hispanic employees worked in the kitchen and that she paid them in cash because they did not have a bank account. She said that she provided five restaurant workers with housing in the residence at 12572 Shallow Brook Court. She stated that she paid for the electricity, water, and

Defendant's Initials _____        3

everything else at the residence, including repairs. She said that she provided the workers who lived at the residence with breakfast, lunch, and dinner from the restaurant for free when they were working. She said that the workers who lived at the residence were transported between the residence and the restaurant in a Ford van that she owns. She stated that she had driven the van until about a year ago, but since then two Chinese nationals who lived at the residence drove the van most of the time. She said that when they were not available or had a day off she drove the van. She stated that she had been providing transportation for the workers since she became the owner of the restaurant in 2019.

The defendant said that when she hired new employees, she asked them for identification documents such as social security cards and driver licenses. She stated that she asked the three Hispanic workers who were living at the residence for identification when they started working, but they stated that they did not have any identification. She stated that she knew that the three Hispanic employees living at the residence who she paid in cash were illegally present in the United States and were not allowed to work in the United States. She said that she knew that it was wrong to employ workers who were here illegally with no identification documents. She said that she did not ask employees to fill out a Form 1-9, Employment Eligibility Verification, and she did not have any knowledge about the Form I-9.

Under federal law, businesses are required to complete and maintain a Form I-9 for each employee. All employees—citizens and non-citizens—are required to

Defendant's Initials _____        4

complete Section 1 of a Form I-9 at the time of hire. In Section 1, the employee provides information to establish that they are legally permitted to work in the United States. The employer is required to complete Section 2 certifying that the employer has examined the documents the employee presented as proof of the right to work in the United States. As the defendant admitted, she never asked the restaurant workers who were illegally present in the United States to complete Section 1 of a Form I-9 or to provide documentation to establish that they were legally permitted to work in the United States. The defendant knew or recklessly disregarded the fact that the undocumented workers had entered or remained in the United States in violation of the law.

While agents were conducting the search of the residence at 12572 Shallow Brook Court, they encountered an individual who identified himself as Juan Itzel-Kaal. Agents questioned him to determine his immigration status and found that he was a citizen of Guatemala who was illegally present in the United States. He was administratively arrested and transported to the Jacksonville Border Patrol Station for immigration processing.

During the search of the residence, agents observed the following. The rooms were sparsely decorated and contained very little furniture. Several bedrooms had multiple single beds. Two security cameras were in the living room. Bulk quantities of business and restaurant supplies including tables and cleaning products were in the

living room and the garage. A coin-operated laundry machine was installed in the residence. The back door was boarded up with drywall.

During administrative processing, agents interviewed Santiz-Diaz in the Spanish language. During the interview, he stated that he was born in Mexico and is a citizen of Mexico. He said that he had entered the United States illegally in May 2022 by walking across the Mexican border at Arizona and that he did not have legal authorization to work in the United States. He stated that he began working at Kamiya 86 shortly after he arrived in the United States. He said that he was not asked to show any documents when he was hired. He stated that the defendant had asked him if he was in the United States legally and he said no. He said that he lived at the residence but did not pay any rent. He stated that his employer provided food and drink. He said that he worked as a sushi cook and was paid $3,400 per month in cash and that he did not pay any taxes.

During administrative processing, agents interviewed Itzel-Kaal in the Spanish language. During the interview, he stated that he was born in Guatemala and is a citizen of Guatemala. He said that he had entered the United States illegally in October 2003 by walking through the desert near Phoenix, Arizona, and that he did not have legal authorization to work in the United States. He stated that he began working at Kamiya 86 shortly after he arrived in the United States. He said that he was not asked to show any documents when he was hired. He stated that his employer never asked him if he was legally present or allowed to work in the United

Defendant's Initials _____        6

States and he never told his employer whether he was legally present or allowed to work in the United States. He stated that he lived at the residence for free and that his employer provided food for free. He said that the owner of the restaurant arranged for transportation for him to get to and from work and that he did not have to pay for the transportation. He stated that he was paid $100 per day in cash and that he did not pay any taxes.

The defendant paid the undocumented workers' wages in cash, did not withhold taxes and other payments from their wages, did not pay the employer's portion of these payments to government authorities, and did not pay unemployment taxes for the aliens. One of the defendant's motives for providing employment, housing, and transportation to the undocumented workers, and for paying them in cash and not withholding and paying over to the government required taxes and other payments, was to obtain a commercial advantage and private financial gain in the operation of the restaurant.

Defendant's Initials                          7